UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PCE CONSTRUCTORS, INC.

VERSUS

BRISTOL METALS, LLC

CIVIL ACTION

NUMBER 14-13-SCR

**RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Before the court is a Motions for Partial Summary Judgment filed by plaintiff PCE Constructors, Inc. ("PCE"), and a Motion for Partial Summary Judgment filed by defendant Bristol Metals, LLC, ("Bristol Metals"). Record document numbers 20 and 26, respectively. Both motions are opposed.[1]

All of the parties' arguments and exhibits have been considered. Based on the applicable law and the analysis that follows, the Motion for Partial Summary Judgment filed by PCE is denied, and the Motion for Partial Summary Judgment filed by Bristol Metals is granted, in part.

**Background and Undisputed Facts**

A series of emails, some with documents attached, went back and forth between Marc Lafferty of PCE and Mark Randall of Bristol

---

[1] Record document number 26, Bristol Metals' Opposition to the Motion for Partial Summary Judgment of Plaintiff; record document number 29, Plaintiff's Response to Defendant's Motion for Partial Summary Judgment. Bristol Metals filed a Reply Memorandum in Support of Motion for Partial Summary Judgment. Record document number 33.

Metals on November 10, 2011.[2] The first email on November 10 shows that PCE received an attached Proposal from Bristol Metals to furnish, fabricate and deliver steel piping to PCE for use in the construction of a urea and nitric acid plant in Coffeyville, Kansas.[3] Paragraph 15 of the Proposal stated in part: "Acceptance of this offer must be made in writing and forwarded to our office in Bristol, Tennessee. We cannot make any shipments until your purchase order is received and we have 5 working days to acknowledge receipt."

After receipt of the Proposal, Lafferty of PCE sent an email to Randall of Bristol Metals, which stated as follows:

> I am in agreement with the proposal. Is there a person to put the PO to the attention of and to whom do I e-mail the copy of the PO to? If required, I will need a credit application to get to my financial people. I will make our meeting minutes a part of the PO as well so let me know if there are any discrepancies in that document.

In his return email Randall stated he approved the meeting minutes, and told Lafferty to send the Purchase Order to his attention. Later that afternoon, Lafferty sent Randall an email with the Purchase Order for the pipe fabrication attached.[4] Lafferty told Randall that he would need an acceptance copy of the

---

[2] Record document number 26-4, Exhibit C.

[3] Record document number 26-3, Exhibit B (hereafter, "Proposal").

[4] Record document number 26-5, Exhibit D (hereafter, "Purchase Order").

2

Purchase Order sent back to him, and also stated that the Purchase Order was the go-ahead to purchase material. Lafferty concluded: "I would like to thank you for your offer and I look forward to working with you all."

The Purchase Order was attached to the final email from Randall to Lafferty. The first page of the Purchase Order contains the following language:

> ONE LOT OF PIPE FABRICATION PER ATTACHED QUOTATION 0711CB11 & 0911CBT12R-1 DATED 10 NOVEMBER 2011. BRISTOL IS TO SUPPLY ALL LABOR, SUPERVISION, MATERIALS, DETAILING CONSUMABLES AND DELIVERY TO OUR JOBSITE IN COFFEYVILLE, KS
>
> BRISTOL WILL MAINTAIN AND FURNISH ALL QA/QC DOCUMENTATION UNTIL PROJECT COMPLETION OR UPON REQUEST
>
> ATTACHED PRE-AWARD MEETING MINUTES BECOME A PART OF THIS PURCHASE ORDER

The construction of the Kansas plant proceeded. After PCE installed most of the Bristol Metals pipe on the project, PCE learned that some of the pipe was fabricated with improper weld-filler material and notified Bristol Metals. In an email to PCE dated August 15, 2012, Bristol Metals confirmed that some of the pipe it delivered did not use proper weld-filler metal, and explained the corrective action it would take to eliminate any similar issues in the future.[5]

PCE later filed this action in state court against Bristol

---

[5] Record document 20-2, Exhibit B, email from Roger Isbell of Bristol Metals to Lafferty.

Metals to obtain relief for the substantial costs it alleges it incurred to inspect and replace the pipe supplied by Bristol Metals that did not contain the correct weld-filler metal.[6] PCE claimed that it is entitled to recover the total amount of damages caused by Bristol Metals failure to supply pipe fabricated to contract specifications in the amount of $1,446,565.00.[7]

Bristol Metals removed the action to this court based on diversity jurisdiction. Bristol Metals denied that it owes the damages claimed by PCE, and also counterclaimed to recover the amount of the outstanding accounts receivable it claims PCE owes for the pipe it delivered for the project.[8] The parties filed motions for partial summary judgment on issues related to contract formation and what provisions govern the contractual relationship between the parties. In its motion Bristol Metals also moved to dismiss all of PCE's claims for consequential, indirect and incidental damages.

## Parties' Arguments

PCE argued that its Purchase Order was not an acceptance of the Proposal, but a counteroffer and rejection of the terms and

---

[6] Record document number 20-2, Exhibit A, Declaration of Mark H. Allen.

[7] Record document number 13, Status Report, Section E.

[8] Bristol Metals claimed it is owed $130,593.26, plus interest. *Id.*

4

conditions of the Proposal. According to PCE, the Purchase Order it sent back to Bristol Metals contained terms and conditions that differed significantly from the Proposal. Therefore, PCE argued, when the Purchase Order, which contained an integration clause, was accepted by Bristol Metals it controlled the contractual relationship and eliminated any terms in the Proposal that put restrictions on PCE's recovery of damages. Consequently, PCE argued that the damages it seeks to recover are not limited by any provision of Bristol Metals' Proposal because it did not accept those terms. PCE argued that the final email on November 10, 2011 from Lafferty to Randall supports the conclusion that the Purchase Order was a counteroffer because Lafferty stated that it had to be accepted and returned. This is so, PCE argued, because there would be no need to accept and return the Purchase Offer if it was not a counteroffer.

PCE also argued that acceptance of its counteroffer - the Purchase Order - was expressly limited to its terms, and there is a material conflict between the absence of limitations of its remedies in the Purchase Order and the limitations on liability contained in the Proposal. Therefore, under La.Civ.Code art. 2601, the additional limitations contained in the Proposal are not a part of the contract.

Bristol Metals argued that when PCE unequivocally accepted its Proposal on November 10, 2011, the Proposal, Lafferty's acceptance

5

email, the Purchase Order and the meeting minutes together became the written documents which evidence the existence and terms of its contract with PCE. According to Bristol Metals, when PCE sent the Purchase Order back, with the incorporating language and two documents attached, this was not a counteroffer. Instead, it was simply a memorialization of the agreement following the email acceptance. Bristol Metals noted that the unqualified acceptance email, and PCE's incorporation of the entire Proposal, demonstrates that PCE agreed to all of the terms contained in the Proposal. Bristol Metals pointed out that the Purchase Order does not contain any terms related to limitations on its liability for damages. Therefore, Bristol Metals argued, the Proposal – which PCE accepted and that does have such provisions – cannot be interpreted as materially different from or inconsistent with the Purchase Order.

In addition to moving for partial summary judgment on the issue of contract formation, Bristol Metals also moved for summary judgment dismissing PCE's claims for damages. Bristol Metals argued that it has fulfilled all of its obligations under the contract, and under the provisions governing its warranties for workmanship and materials it cannot be held liable for the consequential, indirect and incidental damages claimed by PCE. Therefore, PCE's entire damages claim should be dismissed.

## **Applicable Law**

Summary judgment is appropriate when the moving party, in a properly supported motion, demonstrates that there is "no genuine

6

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). The determination of whether a contract is clear or ambiguous is a question of law. *In re Combustion*, 960 F.Supp. 1076, 1079 (W.D.La. 1997). Because the proper interpretation of an unambiguous contract is a legal issue, it may appropriately be decided on a motion for summary judgment. *Boudreaux v. Unionmutual Stock Life Insurance Company of America*, 835 F.2d 121, 123 (5th Cir. 1988). However, if the language of the contract is ambiguous or susceptible to multiple interpretations, the intent of the parties must be determined. This ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties, and the trier of fact must resolve the factual issue of intent. Therefore, summary judgment is inappropriate. *Guidry v. American Public Life Ins. Co.,* 512 F.3d 177, 181 (5th Cir. 2007).

Under Louisiana law a contract is formed by the consent of the parties. La.Civ.Code art. 1927.[9] Mutual consent in contract formation is covered by La.Civ.Code art. 1927:

> A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made

---

[9] Under Louisiana law the formation of a valid contract requires four elements: (1) capacity; (2) consent; (3) cause; and (4) lawful object. *Gibbens v. Champion Industries, Inc.*, 547 Fed.Appx. 576 579 (5th Cir. 2013). Elements one, three and four are not at issue in these motions.

7

orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.

Generally, an acceptance that is not in accordance with the terms of the offer is deemed a counteroffer. La.Civ.Code art. 1943. However, additional or different terms contained in the acceptance of an offer to sell a movable are a departure from the general rule, and are specifically addressed in La.Civ.Code art. 2601 which states:

> An expression of acceptance of an offer to sell a movable thing suffices to form a contract of sale if there is agreement on the thing and the price, even though the acceptance contains terms additional to, or different from, the terms of the offer, unless acceptance is made conditional on the offeror's acceptance of the additional or different terms. Where the acceptance is not so conditioned, the additional or different terms are regarded as proposals for modification and must be accepted by the offeror in order to become a part of the contract.
>
> Between merchants, however, additional terms become part of the contract unless they alter the offer materially, or the offer expressly limits the acceptance to the terms of the offer, or the offeree is notified of the offeror's objection to the additional terms within a reasonable time, in all of which cases the additional terms do not become a part of the contract. Additional terms alter the offer materially when their nature is such that it must be presumed that the offeror would not have contracted on those terms.

Interpretation of a contract formed by the mutual consent of the parties is the determination of the common intent of the parties. La. Civ.Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code art. 2046. This established rule of strict

construction does not allow the parties to create an ambiguity where none exists, and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties. Thus, if the court finds the terms of a written contract are clear and unambiguous, the parties' meaning or intent must be determined from the four corners of the contract, and parol or other extrinsic evidence cannot be used to vary or explain the contract terms. Only where a contract is ambiguous can a court base its interpretation on extrinsic evidence. *In re Liljeberg Enterprises, Inc.* 304 F.3d 410, 439-440 (5th Cir. 2002). A contract is ambiguous, if after applying established rules of construction, the terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language used in the contract. *Preston Law Firm, L.L.C. v. Mariner Health Care Management Co.,* 622 F.3d 384, 392 (5th Cir. 2010).

The words of a contract must be given their generally prevailing meaning. La.Civ.Code art. 2047. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La.Civ.Code art. 2050. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La.Civ.Code art. 2056. *Klein v. Nabors Drilling USA L.P.,* 710 F.3d 234, 237-38 (5th Cir. 2013).

## Analysis

The plain terms of the writings at issue in this contract dispute do not support PCE's arguments. Just two days after the November 8, 2011 Pipe Fabrication Pre-Award Meeting, which was attended by both Lafferty and Randall, Randall sent an email to Lafferty with Bristol Metals' Proposal. That email stated: "After you review, let me know if I missed anything." It is undisputed that the Proposal included all the provisions numbered 1 through 29 under the heading, "Notes." After receiving the Proposal, Lafferty's reply email to Randall was clear and unequivocal: "I am in agreement with the proposal." Lafferty did not identify any provision of the Proposal to which he did not agree, or that he rejected or modified.[10]

It is also undisputed that a few hours later Lafferty sent a reply email to Randall, and as promised, attached a copy of PCE's Purchase Order with the Proposal and notes from the Pipe Fabrication Pre-Award Meeting attached.[11] On the face of the Purchase Order at the bottom of the page it plainly refers to the

---

[10] Of significance to this case, Lafferty did not express any disagreement with the limitation of liability provisions in the Proposal.

[11] Again, Lafferty did not specifically reject or attempt to modify the limitation of liability provisions in the Proposal to which he has already agreed in writing. The Terms and Conditions of the Purchase Order do not include one specifying the categories of damages which PCE may recover, or one that is clearly contrary to the limitation of liability provisions in the Proposal.

Purchase Order as "this agreement."[12] It is also apparent from the language used on the first page of the Purchase Order that it incorporated the entire Proposal and notes from the meeting. Under the description section of the Purchase Order the first item described was a specific reference to the Proposal and a notation that it was attached. The last description noted that the pre-award meeting minutes were attached and were a part of the Purchase Order.

All of this language is consistent with Lafferty's statement that he would email the Purchase Order and make the meeting minutes a part of the Purchase Order, "as well."[13] Use of this phrase by Lafferty also supports the conclusion that the Purchase Order fully incorporated the terms of the Proposal. The phrase clearly indicates that something else is also a part of the Purchase Order, which can only be the Proposal that was referenced first and attached. Neither Lafferty's emails, nor the Purchase Order with any of its attachments, indicated any disagreement, rejection or modification of any provision of the Proposal. Furthermore, in none of these emails and documents is there any sign of any

---

[12] At the bottom of the Purchase Order it stated: "INVOICES WILL NOT BE APPROVED FOR PAYMENT UNTIL THE ACCEPTANCE COPY OF THIS AGREEMENT IS EXECUTED AND RETURNED." The date of the acceptance signature by Bristol Metals was June 25, 2012. Neither party explained why this date was so many months after the agreement was reached.

[13] In his reply email, Randall approved the meeting minutes Lafferty attached to the Purchase Order, stating, "Meeting notes are OK."

negotiations, disagreement, or discussion going back and forth about specific provisions or terms either party did not want in the contract.[14]

Based on the undisputed facts, there is no basis to find that PCE's unequivocal acceptance was not in accordance with the terms of Bristol Metals' offer, i.e. the Proposal. Therefore, based on the parties' written communications and PCE's acceptance/transmission of the Purchase Order with the attached Proposal and meeting minutes, there was a meeting of the minds and the contract was formed by mutual consent of the parties.

Contrary to PCE's argument, this conclusion is not undermined by Lafferty's statement he would need an "acceptance copy" returned. Use of the word "copy" in this context is simply a request for Bristol Metals to acknowledge its receipt of the agreement the parties had reached, rather than an acceptance of a counteroffer by PCE. PCE's arguments are essentially an attempt to create an ambiguity where none exists.[15]

**Conclusion**

Given the analysis above, the contract between the parties is comprised of all the terms, conditions and provisions of the

---

[14] Bristol Metals also never gave any indication that it wanted to reject or modify any terms contained in the Terms and Conditions part of the Purchase Order.

[15] PCE's arguments relying on La.Civ.Code art. 2601 are also rejected, since they are based on the premise that the Purchase Order was a counteroffer.

Proposal, the Pipe Fabrication Pre-Award Meeting notes, and the Purchase Order.[16] Insofar as Bristol Metals moved for partial summary judgment on what constitutes the contract between the parties, its motion is granted.

Insofar as either party sought a finding on what type or amount of damages PCE can or cannot recover under the contract, summary judgment in favor of Bristol Metals is also granted, in part. The position of Bristol Metals is supported by the contract.[17] Paragraphs 12 and 13 of the Proposal collectively limit its liability to, at most: (1) correction of (a) errors in fabrication or engineering, (b) defects in materials, and (c) faulty workmanship; (2) if, after notice and with its written consent, time does not allow Bristol Metals to correct a fabrication error, giving a credit against the contract price; and (3) the price of defective materials. These provisions are not contrary to any of the Terms and Conditions of the Purchase Order.[18]

Bristol Metals also sought a summary judgment determination that it is not liable for consequential, indirect, or incidental

---

[16] All of the cases cited have been reviewed. None of them are controlling or helpful in deciding the motions.

[17] Bristol Metals argued that even if the Purchase Order did modify some terms and conditions of the contract, it is silent as to the limitation of liability provisions of the Proposal and therefore did not modify them. Record document number 26-1, supporting memorandum, p. 9-14.

[18] As Bristol Metals noted, there is no apparent inconsistency between paragraphs 12 and 13 and the guarantees of the Seller in paragraph 9 of the Purchase Order's Terms and Conditions.

13

damages.[19] Although in general the contract does not state that it allows recovery for consequential, indirect, or incidental of damages, it is not clear what "damages" sought by PCE, if any, fall into these categories.[20] Further factual development of this issue is necessary before it can be resolved, whether by another dispositive motion or at trial.

Accordingly, the Motion for Partial Summary Judgment filed by plaintiff PCE Constructors, Inc. is denied. The Motion for Partial Summary Judgment filed by defendant Bristol Metals, LLC is granted, in part. The motion is granted to the extent the court finds that (1) the contract consists of the Proposal, the Pipe Fabrication Pre-Award Meeting notes, and the Purchase Order, and (2) the liability of Bristol Metals is limited to the remedies in paragraphs 12 and 13 of the Proposal. In all other respects, the Motion for Partial Summary Judgment filed by defendant Bristol Metals, LLC is denied.

Baton Rouge, Louisiana, August 11, 2014.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[19] Record document number 26-1, p. 14.

[20] In the Status Report, PCE listed eight categories of "damages." Record document number 13, Status Report, p. 2, Sec. E, Damages (totaling $1,446,565.)